[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Turner v. CertainTeed Corp.,* Slip Opinion No. 2018-Ohio-3869.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3869

TURNER, APPELLEE, ET AL., *v.* CERTAINTEED CORPORATION ET AL.; UNION CARBIDE CORPORATION, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Turner v. CertainTeed Corp.,* Slip Opinion No. 2018-Ohio-3869.]

*Asbestos claims—Court of appeals' judgment affirming trial court's denial of manufacturer's motion for administrative dismissal reversed and cause remanded for trial court to determine whether manufacturer put application of R.C. 2307.92(C)(1) at issue by submitting "written report of a competent medical authority" specifying that plaintiff had "smoked the equivalent of one-pack year * * * during the last fifteen years" under R.C. 2307.91(DD).*

(No. 2017-0004—Submitted February 13, 2018—Decided September 27, 2018.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 103475, 2016-Ohio-7776.

_____

**FISCHER, J.**

{¶ 1} When a plaintiff is a "smoker" who alleges that he or she suffers from lung cancer as a result of asbestos exposure, the plaintiff must make a prima facie showing that satisfies the requirements listed in R.C. 2307.92(C)(1), including a "diagnosis by a competent medical authority that the [plaintiff] has primary lung cancer and that exposure to asbestos is a substantial contributing factor to that cancer," R.C. 2307.92(C)(1)(a). A plaintiff who is not a "smoker" need not satisfy those requirements. This case presents the question of how to determine whether a plaintiff is a "smoker."

{¶ 2} In the instant case, plaintiff-appellee, Bobby Turner, did not attempt to make the prima facie showing required under R.C. 2307.92(C)(1). Relying on the definition of "smoker" provided in R.C. 2307.91(DD), defendant-appellant, Union Carbide Corporation argued that medical records demonstrate that Turner has a history of smoking and, therefore, should be required to prove that he is a nonsmoker by means of a written medical report. The court of appeals rejected Union Carbide's argument and held that whether someone is a "smoker" is a question of fact, as opposed to a medical determination.

{¶ 3} We reverse the court of appeals' judgment affirming the trial court's denial of the motion for administrative dismissal filed by Union Carbide and remand the case to the trial court for it to determine whether Union Carbide put the application of R.C. 2307.92(C)(1) at issue by submitting "the written report of a competent medical authority" that "specified" that Turner had "smoked the equivalent of one-pack year * * * during the last fifteen years," R.C. 2307.91(DD).

## I. Background

### A. Trial-Court Proceedings

{¶ 4} Turner was diagnosed with lung cancer in 2013. He filed a complaint alleging that his cancer was caused by exposure to asbestos while he worked as a drywall finisher between approximately 1962 and 1978. Union Carbide, which

2

manufactured an asbestos product found in joint compounds that Turner used during that time frame, was named as a defendant.

{¶ 5} Union Carbide moved to dismiss Turner's lawsuit, arguing that he is a "smoker" and that he had not made the prima facie showing under R.C. 2307.92(C)(1) that is required of a person who is a "smoker." Turner filed an affidavit and attached some of his medical records. He claimed that he was a nonsmoker but added that he had smoked some cigars several years prior to his exposures to asbestos. The medical reports supported Turner's assertion that he was a nonsmoker. Shortly thereafter, Union Carbide withdrew its motion to dismiss the complaint.

{¶ 6} After discovery had progressed for nearly a year and a half, Union Carbide filed a second motion to dismiss Turner's suit. Union Carbide again alleged that Turner is a "smoker" as defined in R.C. 2307.91(DD) and that Turner had failed to meet his burden to make the prima facie showing required under R.C. 2307.92(C)(1). Union Carbide argued that medical records that became available during discovery demonstrated that Turner is a "smoker." Union Carbide added that the deposition testimony of Turner's physician also showed that Turner is a "smoker."

{¶ 7} Turner responded by submitting affidavits and citing testimony from several people, including family members, who averred that they had never seen him smoke. Turner also noted that the evidence of his smoking history contained in some medical records was inconsistent with other medical records identifying him as a nonsmoker. In addition, Turner argued that the "pack year" referred to in R.C. 2307.91(DD)'s definition of "smoker" does not encompass cigar smoking.

{¶ 8} The trial court rejected Turner's argument that R.C. 2307.91(DD) applied only to cigarette smokers, acknowledged that some of the medical records indicated that Turner had a history of smoking but discounted those notations as likely mistakes, and concluded that Union Carbide had "failed to prove that Mr.

Turner is a smoker, as defined in R.C. 2307.91(DD)." The trial court therefore denied Union Carbide's motion to dismiss.

### B. Appellate Proceedings

{¶ 9} Union Carbide appealed and argued that Turner needed to submit a "written report of a competent medical authority" stating that he was a nonsmoker. The court of appeals framed the issue as follows: "[W]hen there is conflicting evidence of [a] plaintiff's smoking status, does the plaintiff need to present a written report of competent medical authority to withstand his burden of proving he is a nonsmoker." 2016-Ohio-7776, 66 N.E.3d 802, ¶ 9. To a limited extent, the court of appeals adopted Union Carbide's position when it determined that the trial court had improperly placed the burden of proving that Turner is a "smoker" on Union Carbide. The court of appeals also determined that whether a person is a "smoker" is a question of fact and not a medical issue. Relying on its precedent, the court held that a report by a competent medical authority is required only *after* a person has been determined to be a "smoker." *See Farnsworth v. Allied Glove Corp.*, 8th Dist. Cuyahoga No. 91731, 2009-Ohio-3890, ¶ 30. The court of appeals ultimately affirmed the trial court's judgment and concluded that the trial court's determination that Turner is not a "smoker" "was not against the manifest weight of the evidence." 2016-Ohio-7776, 66 N.E.3d 802, at ¶ 35.

{¶ 10} Union Carbide filed a discretionary appeal to this court, and we accepted that appeal on a single proposition of law:

> In an asbestos tort action alleging lung cancer, when there is evidence that a plaintiff has smoked in the past fifteen years, the General Assembly's express statutory language requires a plaintiff to prove, through a "written report of a competent medical authority," that he is not a "smoker" as defined in R.C. 2307.91(DD). A reviewing court must strictly enforce, and may not

simply ignore, the General Assembly's inclusion of the express "competent medical authority" requirement in the statute.

*See* 150 Ohio St.3d 1429, 2017-Ohio-7567, 81 N.E.3d 1271.

## II. Analysis

### *A. Standard of Review*

{¶ 11} The standard of review for questions of statutory interpretation is de novo. *Ceccarelli v. Levin*, 127 Ohio St.3d 231, 2010-Ohio-5681, 938 N.E.2d 342, ¶ 8. Our main objective is to determine and give effect to the legislative intent. *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees*, 72 Ohio St.3d 62, 65, 647 N.E.2d 486 (1995). We owe no deference to the lower court's decision, nor are we limited to choosing between the different interpretations of the statute presented by the parties.

{¶ 12} When a statute is plain and unambiguous, we apply the statute as written. *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 52, citing *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996). When a statute is unclear and relates to the same subject matter as another statute, we construe the two statutes in pari materia "to discover and carry out legislative intent." *Sheet Metal Workers' Internatl. Assn., Local Union No. 33 v. Gene's Refrig., Heating & Air Conditioning, Inc.*, 122 Ohio St.3d 248, 2009-Ohio-2747, 910 N.E.2d 444, ¶ 38, citing *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.*, 115 Ohio St.3d 224, 2007-Ohio-4920, 874 N.E.2d 780, ¶ 13.

### *B. The Statutory Definition Applies to Cigar Smoking*

{¶ 13} Turner tries to defend the judgment of the court of appeals by repeating his argument that R.C. 2307.91(DD)'s definition of "smoker" does not include cigar smokers and that therefore, he need not make the prima facie showing required under R.C. 2307.92(C)(1).

**{¶ 14}** The definition of "smoker' provided in R.C. 2307.91(DD) is: "a person who has smoked the equivalent of one-pack year, as specified in the written report of a competent medical authority pursuant to sections 2307.92 and 2307.93 of the Revised Code, during the last fifteen years." Turner rests his argument on the National Cancer Institute's definition of "pack year" in terms of cigarette smoking: "A way to measure the amount a person has smoked over a long period of time. It is calculated by multiplying the number of packs of cigarettes smoked per day by the number of years the person has smoked," https://www.cancer.gov/publications/dictionaries/cancer-terms/def/pack-year (accessed July 19, 2018). We reject Turner's argument that the reference to "pack year" in R.C. 2307.91(DD) refers exclusively to cigarettes. R.C. 2307.91(DD), by its plain text, does not distinguish between different types of smoking. The statute provides the level of consumption necessary for a person to be designated a "smoker" but does not provide any limitation on the vehicle for that consumption.

### C. The Statutory Scheme

**{¶ 15}** Under R.C. 2307.92(C)(1), a "smoker" who is suffering from lung cancer must, for purposes of presenting a prima facie case to support a tort claim involving asbestos exposure, meet all the requirements listed in R.C. 2307.92(C)(1)(a) and (C)(1)(b) as well as one of the two requirements listed in R.C. 2307.92(C)(1)(c). The plain text of the statute dictates that only a "smoker" has the burden to meet those requirements.

**{¶ 16}** R.C. 2307.91(DD) defines "smoker" as "a person who has smoked the equivalent of one-pack year, *as specified in the written report of a competent medical authority* pursuant to sections 2307.92 and 2307.93 of the Revised Code, during the last fifteen years." (Emphasis added.) Pursuant to the plain text of the statute, unless there is a *written report of a competent medical authority* that specifies that the person has smoked the equivalent of one pack year during the last 15 years, then that person is *not* a "smoker" for purposes of the relevant statutes.

Additionally, there is no statutory mechanism that permits the person who is specified to be a "smoker" in the written report of *a* competent medical authority to rebut that report. *See* R.C. 2307.91 through 2307.93. "A" means "any." *State v. Ladd*, 56 Ohio St.2d 197, 205, 383 N.E.2d 579 (1978) (William B. Brown, J., dissenting). Thus, pursuant to the plain text of R.C. 2307.91(DD), once *any* competent medical authority has specified in a written report that the plaintiff is a "smoker," that plaintiff has the burden to present the relevant prima facie evidence required under R.C. 2307.92(C)(1); however, when there is not a *written report of a competent medical authority* that specifies that the plaintiff is a "smoker," that plaintiff does *not* have to meet the R.C. 2307.92(C)(1) requirements.

{¶ 17} Turner argues that it is "nonsensical" to require a smoker to make a prima facie showing that includes a report of a competent medical authority and have the same report be the reason that such a prima facie showing is necessary. According to Turner, "to satisfy the requirements of the written report under [R.C.] 2307.92(C)(1)(a), the medical authority must discuss disease attribution in relation to the amount of pack-years smoked, but only *after* it is determined by the court that the statute applies to the 'exposed person who is a smoker.' " (Emphasis sic.) In other words, Turner argues that the competent medical authority prepares a report only if the plaintiff has already been determined to be a "smoker."

{¶ 18} Turner's argument is similar to the reasoning used by the Eighth District Court of Appeals in its decision in *Farnsworth*, 2009-Ohio-3890. There, the court asked: "[W]hat comes first, the smoker or the written report; the smoker or competent medical authority?" *Id.* at ¶ 23. The court concluded that "the smoker must come first—since the written report, which will include the diagnosis from a competent medical authority, is not required until after it has been determined that the person is a smoker." *Id.* at ¶ 24.

{¶ 19} The problem with Turner's reading of the statute is that it ignores the plain language of the statutory definition of "smoker." It cannot be true that the

report of a competent medical authority is required only after one is designated a "smoker" but that one can be designated a "smoker" only if it is specified in the same report. The statutory scheme plainly provides that the starting point is determining whether a person is a "smoker." Only after it has been established that a person is a "smoker"—that is, that a person smoked the equivalent of one pack year in the past 15 years, as specified in the written report of a competent medical authority—is there any need for the plaintiff to make a prima facie showing under R.C. 2307.92(C)(1).

{¶ 20} Turner also argues that whether and how much someone has smoked is a factual question best left to a factfinder rather than a medical professional. This is an argument for the legislature, not this court. We must determine what procedures are set forth within the statute, not what procedures are the most wise. A person is a "smoker" only if that designation is "specified in the written report of a competent medical authority," R.C. 2307.91(DD). If there is not a written report from a competent medical authority specifying that the person is a "smoker," the person is not a "smoker" and, therefore, need not make the prima facie showing described in R.C. 2307.92(C)(1).

{¶ 21} Based on R.C. 2307.91(DD)'s definition of "smoker," Union Carbide maintains that Turner must submit a written report from a competent medical authority that establishes that he is not a "smoker" as defined in the statute.

{¶ 22} One insurmountable problem with Union Carbide's reading is that it ignores that neither the definition of "smoker" in R.C. 2307.91(DD) nor any other provision within the statutory scheme creates the requirement that Turner prove that he is *not* a "smoker."

{¶ 23} R.C. 2307.91(Z) sets forth the requirements for a physician to be considered a "competent medical authority" for purposes of presenting prima facie evidence: " 'Competent medical authority' means a medical doctor who is providing a diagnosis for purposes of constituting prima-facie evidence of an

8

exposed person's physical impairment that meets the requirements specified in section 2307.92 of the Revised Code * * *." R.C. 2307.91(Z) contains four additional criteria that the party must meet before the court can consider the physician a "competent medical authority" for purposes of presenting prima facie evidence. Under R.C. 2307.91(Z), the physician must have certain qualifications, R.C. 2307.91(Z)(1), must not have relied on certain types of reports or opinions in preparing his or her own report, R.C. 2307.91(Z)(3), must not exceed a certain percentage of his or her practice hours providing expert testimony, R.C. 2307.91(Z)(4), and must be treating or have treated and have or have had a doctor-patient relationship with the person who is the subject of the report, R.C. 2307.91(Z)(2). *Renfrow v. Norfolk S. Ry. Co.*, 140 Ohio St.3d 371, 2014-Ohio-3666, 18 N.E.3d 1173, paragraph two of the syllabus.

{¶ 24} In *Renfrow*, we determined that the medical report submitted by the plaintiff was not a report of a "competent medical authority" because the physician who prepared it did not meet the requirements set forth in R.C. 2307.91(Z)(2). We did not address whether R.C. 2307.93(A)(1) has any effect on the definition of "competent medical authority" or whether R.C. 2307.91(Z)(2) is applicable when it is the defendant who submits a physician's report.

{¶ 25} Pursuant to R.C. 2307.93(A)(1), the defendant must be given a reasonable opportunity to challenge the adequacy of the plaintiff's prima facie evidence of a physical impairment and, when the defendant presents a written report for the purpose of challenging the sufficiency of the plaintiff's prima facie evidence, the physician who prepared that report will be considered a "competent medical authority" if that physician meets only the requirements of R.C. 2307.91(Z)(1), (3), and (4). There is no need for that physician to be treating or have treated the person who is the subject of the report, nor is there a need for the physician to have or previously have had a doctor-patient relationship with the person who is the subject of the report, as is required under R.C. 2307.91(Z)(2).

**{¶ 26}** It is worth noting that "physical impairment" is defined in R.C. 2307.91(V). That definition provides: " 'Physical impairment' means * * * lung cancer of an exposed person *who is a smoker* that meets the minimum requirements specified in division (C) of section 2307.92 of the Revised Code * * *." (Emphasis added.) *Id.* Thus, when the defendant challenges the adequacy of the plaintiff's prima facie evidence of a physical impairment, whether the plaintiff is a "smoker" will, in certain cases, be part of such a challenge.

**{¶ 27}** While the statutory scheme is not a model of clarity, each provision of the statutory scheme is unambiguous. The way that the provisions interact, however, is best understood when each provision within the scheme is read in conjunction with the other provisions. When the various provisions within the statutory scheme are given effect in light of the way the provisions interact, the process for determining whether a plaintiff must meet the requirements of R.C. 2307.92(C)(1) is straightforward.

**{¶ 28}** Step one: Pursuant to R.C. 2307.93(A)(1), the plaintiff must submit, within the specified time frame, "a written report and supporting test results constituting prima-facie evidence of the exposed person's physical impairment that meets the minimum requirements specified in [R.C. 2307.92(C)(1)]." If the plaintiff is a smoker, he or she must meet the prima facie-evidence requirements of R.C. 2307.92(C)(1) by submitting a written report from a physician who satisfies the requirements to be considered a "competent medical authority" listed in R.C. 2307.91(Z)(1) through (4). That report must satisfy the requirements listed in R.C. 2307.92(C)(1)(a). The plaintiff must also present evidence to meet the requirements of R.C. 2307.92(C)(1)(b) and (c). In cases like the instant case, the plaintiff will not submit a written report or address the other requirements of R.C. 2307.92(C)(1) because the plaintiff will have asserted, at least implicitly, that division (C) of the statute is inapplicable.

**{¶ 29}** Step two: Pursuant to R.C. 2307.93(A)(1), the defendant may, "upon the defendant's motion, * * * challenge the adequacy of the proffered prima-facie evidence of the physical impairment for failure to comply with the minimum requirements specified in [R.C. 2307.92(C)(1)]." If the defendant wishes to challenge the plaintiff's assertion that R.C. 2307.92(C)(1) is inapplicable, the defendant must file a motion within the specified time frame and submit a written report from a physician that meets the requirements listed in R.C. 2307.91(Z)(1), (3), and (4).[1] *See* R.C. 2307.93(A)(1). That report must specify that the plaintiff has smoked the equivalent of one pack year during the last 15 years and is therefore a "smoker" as defined in R.C. 2307.91(DD). By submitting such a report, the defendant would challenge the adequacy of the prima facie evidence submitted by the plaintiff because the defendant would be arguing that the plaintiff's evidence did not meet certain requirements listed in R.C. 2307.92(C)(1). Moreover, the defendant's opportunity to submit such a report constitutes a "reasonable opportunity" for the defendant to challenge the adequacy of the prima facie evidence submitted by the plaintiff and, thus, gives effect to the relevant language of R.C. 2307.93(A)(1).

**{¶ 30}** Step three: Pursuant to R.C. 2307.93(B), the trial court considers the evidence submitted by the parties to determine whether "a competent medical authority" has specified that the plaintiff is a "smoker" as defined in R.C. 2307.91(DD). The trial court applies "the standard for resolving a motion for summary judgment" and determines whether the proffered prima facie evidence meets the requirements listed in R.C. 2307.92(C)(1).

---

[1] Turner did not argue below, and has not argued here, that Union Carbide's motion for administrative dismissal was untimely. Therefore, whether Union Carbide's motion was timely is not an issue that is before this court. We take no position on whether Union Carbide could successfully argue that the motion was filed prior to the expiration of the statutory deadline or whether the trial court may extend the statutory deadline.

**{¶ 31}** Step four: Pursuant to R.C. 2307.93(C), if the court determines that the plaintiff has been properly designated a "smoker" but has not met the requirements listed in R.C. 2307.92(C)(1), the court shall administratively dismiss the action without prejudice but shall retain jurisdiction. The plaintiff may then move to reinstate the action by making a prima facie showing that meets the minimum requirements specified in R.C. 2307.92(C)(1).

**{¶ 32}** The process explained above gives effect to the plain text of the relevant provisions of the statutory scheme. By interpreting the provisions in this way, we give effect to the words contained in the relevant statutory provisions and the legislative intent behind the scheme.

### D. Disposition of the Proposition of Law

**{¶ 33}** We conclude that in an asbestos tort action alleging lung cancer, the express statutory language *does not* require a plaintiff to prove, through a "written report of a competent medical authority," that he or she is not a "smoker" as defined in R.C. 2307.91(DD). The plaintiff must satisfy the requirements set forth in R.C. 2307.92(C)(1) only when the plaintiff has been designated a "smoker" in a written report of a competent medical authority pursuant to R.C. 2307.91(DD).

### E. Issues of Fairness

**{¶ 34}** The General Assembly's decision to provide no mechanism by which the plaintiff may challenge a written report submitted by the defendant's physician specifying that the plaintiff is a "smoker" is not unfair. The plaintiff has additional burdens as a result of this written report, but those additional burdens consist only of submitting three types of evidence. First, the plaintiff must submit a written report, which is irrebuttable for purposes of presenting the prima facie case, that is prepared by the plaintiff's own competent medical authority and that asserts that the plaintiff has lung cancer and that "exposure to asbestos is a substantial contributing factor to that cancer." R.C. 2307.92(C)(1)(a). Second, the plaintiff must submit "[e]vidence that is sufficient to demonstrate that at least ten

years have elapsed from the date of the exposed person's first exposure to asbestos until the date of diagnosis of the exposed person's primary lung cancer. The ten-year latency period described in this division is a rebuttable presumption, and the plaintiff has the burden of proof to rebut the presumption." R.C. 2307.92(C)(1)(b). And third, the plaintiff must submit either "[e]vidence of the exposed person's substantial occupational exposure to asbestos" or "[e]vidence of the exposed person's exposure to asbestos at least equal to 25 fiber per cc years as determined to a reasonable degree of scientific probability by a scientifically valid retrospective exposure reconstruction conducted by a certified industrial hygienist or certified safety professional based upon all reasonably available quantitative air monitoring data and all other reasonably available information about the exposed person's occupational history and history of exposure to asbestos." R.C. 2307.92(C)(1)(c)(i) and (ii).

{¶ 35} In essence, the requirements listed in R.C. 2307.92(C)(1) must be satisfied for the plaintiff to be successful at trial. To win at trial, the plaintiff will need to demonstrate that he or she was exposed to a sufficient amount of asbestos to cause lung cancer, that the dates of the plaintiff's exposure to asbestos are consistent with the development of the lung cancer, and that the lung cancer was, in fact, caused in significant part by the asbestos exposure. If the plaintiff were to fail to offer such proof at trial, the plaintiff would probably have failed to demonstrate that the lung cancer was caused by the asbestos exposure. Thus, the requirement to present additional evidence in order to make a prima facie showing under R.C. 2307.92(C)(1) is a de minimis additional burden. The plaintiff may be required to present evidence sooner than would otherwise be necessary, and perhaps in a different form, but the plaintiff is not required to present a substantial amount of evidence that would otherwise not need to be presented. Moreover, should the plaintiff fail to produce the prima facie evidence and the case were to be administratively dismissed, the plaintiff would have the opportunity to submit the

necessary prima facie evidence and move the trial court to reinstate the action pursuant to R.C. 2307.93(C).

{¶ 36} The second issue of fairness that should be addressed is the threat of a surprise report submitted by the defendant after the plaintiff has rested his or her case. The statutory scheme precludes this tactic. Under R.C. 2307.93(A)(1), any challenge to the prima facie case must be submitted by motion within 120 days after the prima facie evidence is proffered, which is required to be presented by the plaintiff within 30 days of filing the complaint. Given the practical realities of asbestos litigation, it is unrealistic to believe that a trial will have commenced within 120 days after the prima facie evidence is proffered or the deadline to proffer such evidence has passed. Moreover, courts generally set a dispositive-motion deadline within the case schedule for each case, and that deadline is prior to the beginning of any trial. *See, e.g.*, Loc.R. 53 of the Court of Common Pleas of Franklin County, General Division; Loc.R. 15(A) of the Court of Common Pleas of Hamilton County, General Division. Thus, the challenge will generally be made by pretrial motion or the challenge will be untimely. Moreover, the surprise tactic would be of little benefit to the defendant given that the plaintiff can have the action reinstated by making a prima facie showing under R.C. 2307.93(C).

{¶ 37} We stress that the reports submitted by the competent medical authorities are irrebuttable for purposes of the prima face case only. There is no provision in R.C. 2307.91 through 2307.93 that precludes the defendant from arguing to the trier of fact that smoking, not asbestos, was the cause of the plaintiff's lung cancer. Further, there is no provision in R.C. 2307.91 through 2307.93 that precludes the plaintiff from arguing to the trier of fact that smoking could not have been the cause of the lung cancer because the plaintiff is not a "smoker." Thus, these arguments could be made regardless of whether R.C. 2307.92(C)(1) was at issue before trial.

14

### F. Application of the Statutory Scheme to this Case

{¶ 38} In support of its motion for administrative dismissal, Union Carbide submitted medical records and highlighted deposition testimony supporting the assertion that the smoking habits of Turner were sufficient to meet the "one-pack year" threshold required for designating a person a "smoker" pursuant to R.C. 2703.91(DD). Union Carbide also submitted the affidavit of Eric R. Pacht, M.D., who stated, "As a pulmonologist, I would consider Bobby Turner to be a smoker * * *." The trial court stated in a footnote that "the affidavit of Dr. Pacht does not meet the requirements of R.C. 2307.93(A)(1)." The trial court did not, however, plainly state whether, under R.C. 2307.91(DD), Dr. Pacht's affidavit—or any other submission by Union Carbide—can be considered a "written report of a competent medical authority" that specifies that Turner is a "smoker" because he "smoked the equivalent of one-pack year * * * during the last fifteen years."

{¶ 39} It may or may not be proper for the trial court to deny Union Carbide's motion for administrative dismissal, but the trial court cannot do so without first following the procedures set forth in R.C. 2307.93(B) to determine whether Union Carbide's presentation of Dr. Pacht's affidavit—or some other "written report of a competent medical authority"—was sufficient to meet its burden to put R.C. 2307.92(C)(1) at issue. If, after following the procedures set forth in R.C. 2307.93(B), the court finds that Union Carbide did establish that Turner is a "smoker" as defined in R.C. 2307.91(DD), the trial court must determine whether Turner satisfied the requirements set forth in R.C. 2307.92(C)(1).

### III. Conclusion

{¶ 40} The plain reading of the statutory scheme provides that the defendant can require the plaintiff to make a prima facie case that satisfies the requirements listed in R.C. 2307.92(C)(1) only by submitting a written report from a "competent medical authority" that specifies that the plaintiff has smoked the equivalent of one-pack year during the last 15 years, R.C. 2307.91(DD). Accordingly, we reverse the

judgment of the court of appeals and remand the case to the trial court to determine whether Union Carbide submitted such a report and for further proceedings consistent with this opinion.

Judgment reversed<br>and cause remanded.

FRENCH and DEGENARO, JJ., concur.

O'CONNOR, C.J., concurs in judgment only.

KENNEDY, J., concurs in judgment only, with an opinion joined by O'DONNELL, J.

DEWINE, J., concurs in judgment only, with an opinion.

_____

**KENNEDY, J., concurring in judgment only.**

{¶ 41} I concur in judgment only.

{¶ 42} When a plaintiff brings an asbestos claim for lung cancer without submitting the prima facie evidence required of a "smoker" pursuant to R.C. 2307.92(C)(1) within 30 days after filing the complaint or other initial pleading and discovery reveals that the plaintiff has a history of using smoking tobacco in the preceding 15 years, who has the burden to prove that the plaintiff was or was not required to submit that prima facie evidence?

{¶ 43} This is not the question we accepted for review, but the lead opinion raises it nonetheless. And in seeking to answer it, the justices joining the lead opinion fall victim to what the late Justice Antonin Scalia and Bryan A. Garner have described as "[t]he false notion that when a situation is not quite covered by a statute, the court should reconstruct what the legislature would have done had it confronted the issue." (Boldface omitted.) Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 349 (2012). Then, in the guise of statutory construction, the lead opinion fashions a four-step process to fill the gaps it sees in the statutory scheme, taking a statute that permits the defendant to challenge only

the prima facie evidence *proffered* by the plaintiff and applying it to require the defendant to challenge the plaintiff's *failure to proffer* that evidence.

{¶ 44} Adopting the analysis of the lead opinion would subvert the General Assembly's purposes in enacting Am.Sub.H.B. No. 292, 150 Ohio Laws Part III, 3970 ("H.B. 292"), in two ways. First, by shifting the burden to the defendant to establish that the plaintiff is a "smoker," the lead opinion would vitiate the legislature's intent to give priority only to those plaintiffs who can demonstrate at the outset of litigation that asbestos exposure caused the plaintiff's lung cancer. Second, the lead opinion devises an illusory mechanism to afford defendants a chance to prove that the plaintiff is a "smoker," yet the defendant lacks the evidence needed to make this showing without access to the plaintiff's smoking history. Its four-step process therefore disregards the restrictive language of the statute and would render it a dead-letter law for all practical purposes—no plaintiff would be required to comply with it, and no defendant could compel him or her to do so.

{¶ 45} However, as Justice Scalia and Garner explained, "In truth, many *casus incogitati* [circumstances not contemplated by the statute's drafters] are fully covered by a statute: Although the legislators did not consider a particular circumstance, the text plainly applies or does not apply by its very words." Scalia & Garner at 350.

{¶ 46} The actual words that the General Assembly enacted answer the question propounded by the lead opinion without the need to resort to a judicial interpretation that adds and deletes words in order to "give effect" to the statutory scheme, lead opinion at ¶ 32. It is the plaintiff who bears the burden of proving that he or she is not a "smoker." R.C. 2307.92(C)(1) prohibits anyone from "bring[ing] or maintain[ing]" an asbestos claim for lung cancer unless one of two preconditions is met: (1) the plaintiff is not a "smoker" or (2) within 30 days after filing the complaint or other initial pleading, the plaintiff submits prima facie evidence showing that exposure to asbestos was a "substantial contributing factor"

to the lung cancer. Importantly, only the plaintiff can comply with the timing and evidentiary requirements for establishing the right to bring an asbestos claim for lung cancer. The plaintiff is the only party who has access to his or her medical records and smoking history within 30 days after commencing the action, and the sole criterion for determining whether the plaintiff is a "smoker"—the report of a competent medical authority—can be supplied only by the plaintiff's own treating physician.

{¶ 47} Therefore, when the plaintiff files an asbestos claim for lung cancer without timely submitting the prima facie evidence required by R.C. 2307.92(C)(1) and discovery reveals evidence that the plaintiff used smoking tobacco in the preceding 15-year period, the plaintiff can avoid an administrative dismissal of the complaint only by submitting a written report of a competent medical authority opining that the plaintiff's use of smoking tobacco is less than "the equivalent of one-pack year," R.C. 2307.91(DD).

{¶ 48} After his smoking history came to light in discovery, appellee, Bobby Turner, failed to provide a report of a competent medical authority showing that he is not a "smoker." Accordingly, I would reverse the judgment of the court of appeals and would order that the complaint be administratively dismissed without prejudice.

### The Intention of the General Assembly in Enacting H.B. 292

{¶ 49} In 2004, the General Assembly confronted a growing crisis. Ohio had become "a haven for asbestos claims"; tens of thousands of asbestos actions had been filed in Ohio's courts, and most of those had been filed by claimants who were not sick at the time. 150 Ohio Laws, Part III, at 3989-3990. At the same time, the cost of compensating claimants who were not sick had bankrupted numerous companies, jeopardized compensation for people with serious asbestos-related diseases, and threatened Ohio's economy and the savings, retirement benefits, and jobs of current and retired employees. *Id.* at 3989-3991. Seeking to stem "an

unending flood of asbestos cases brought by claimants who are not sick," *id.* at 3990, the General Assembly passed H.B. 292 with the purposes to

> (1) *give priority to those asbestos claimants who can demonstrate actual physical harm or illness caused by exposure to asbestos*; (2) fully preserve the rights of claimants who were exposed to asbestos to pursue compensation should those claimants become impaired in the future as a result of such exposure; (3) enhance the ability of the state's judicial systems and federal judicial systems to supervise and control litigation and asbestos-related bankruptcy proceedings; and (4) conserve the scarce resources of the defendants to allow compensation of cancer victims and others who are physically impaired by exposure to asbestos while securing the right to similar compensation for those who may suffer physical impairment in the future.

(Emphasis added.) *Id.* at 3991.

{¶ 50} As part of that effort, the General Assembly enacted R.C. 2307.92(C)(1), which limits when a "smoker" may "bring or maintain" an asbestos claim to recover for lung cancer. Recognizing that smoking causes lung cancer, the statute requires a "smoker" to submit prima facie evidence supporting the asbestos claim, including "[a] diagnosis by a competent medical authority that the exposed person has primary lung cancer and that exposure to asbestos is a substantial contributing factor to that cancer." R.C. 2307.92(C)(1)(a). The prima facie evidence must be submitted within 30 days after the filing of the complaint or other initial pleading, and "[t]he defendant has one hundred twenty days from the date the specified type of prima-facie evidence is proffered to challenge the adequacy of that prima-facie evidence." R.C. 2307.93(A)(1).

{¶ 51} In turn, R.C. 2307.91(DD) defines "smoker" as "a person who has smoked the equivalent of one-pack year, as specified in the written report of a competent medical authority pursuant to sections 2307.92 and 2307.93 of the Revised Code, during the last fifteen years." Therefore, a user of smoking tobacco who smoked less than "the equivalent of one-pack year" during that period is not a "smoker."

{¶ 52} Moreover, the General Assembly established specific criteria for when a medical doctor is a "competent medical authority" for purposes of R.C. 2307.91(DD). Those criteria include the requirement that "[t]he medical doctor is actually treating or has treated the exposed person and has or had a doctor-patient relationship with the person," R.C. 2307.91(Z)(2).

{¶ 53} When a "smoker" fails to make the required prima facie showing, R.C. 2307.93(C) directs the court to administratively dismiss the complaint without prejudice and to retain jurisdiction over the case. The plaintiff may move to reinstate the case when he or she is able to make the prima facie showing required by the statute.

### The Lead Opinion's Flawed Analysis

{¶ 54} The lead opinion states that "the express statutory language *does not* require a plaintiff to prove, through a 'written report of a competent medical authority,' that he or she is not a 'smoker' as defined in R.C. 2307.91(DD)." (Emphasis sic.) Lead opinion at ¶ 33. It then concludes that "the defendant can require the plaintiff to make a prima facie case that satisfies the requirements listed in R.C. 2307.92(C)(1) only by submitting a written report from a 'competent medical authority' that specifies that the plaintiff has smoked the equivalent of one-pack year during the last 15 years, R.C. 2307.91(DD)." *Id.* at ¶ 40. And the jurists joining the lead opinion would reverse the judgment of the court of appeals and remand the matter to the trial court "to determine whether [appellant,] Union Carbide [Corporation,] submitted such a report," *id.*, raising, but not deciding, the

issue whether Union Carbide's motion for administrative dismissal was timely, *id.* at ¶ 29, fn. 1.

{¶ 55} If adopted, this analysis would thwart the General Assembly's purposes in enacting H.B. 292 to prioritize claims of plaintiffs who can demonstrate at the outset of the litigation that asbestos exposure caused the injury in order to limit the impact of asbestos ligation on courts and conserve the scarce resources of defendants. First, the lead opinion would erroneously shift the burden to the defendant to prove that the exposed person is a "smoker." Second, the opportunity to prove that the plaintiff is a "smoker" is illusory, because the defendant lacks access prior to discovery to the plaintiff's medical records and smoking history and therefore cannot obtain the report of a competent medical authority within the time limits that the lead opinion would impose.

### *The Burden of Proof*

{¶ 56} The court of appeals in this case correctly held that the plaintiff " 'has the ultimate burden to prove that the exposed person is not a smoker.' " 2016-Ohio-7776, 66 N.E.3d 802, ¶ 10, quoting *Farnsworth v. Allied Glove Corp.*, 8th Dist. Cuyahoga No. 91731, 2009-Ohio-3890, ¶ 32. Despite the fact that Turner has not challenged that holding, the lead opinion takes the opportunity to disapprove of it.

{¶ 57} However, the plaintiff carries the ultimate burden of proof on an asbestos claim at trial. *Schwartz v. Honeywell Internatl., Inc.*, 153 Ohio St.3d 175, 2018-Ohio-474, 102 N.E.3d 477, ¶ 13. This is in keeping with the General Assembly's express intention to give priority only to "those asbestos claimants who can demonstrate" that exposure to asbestos caused lung cancer, 150 Ohio Laws, Part III, at 3991.

{¶ 58} For this reason, the legislature provided in R.C. 2307.92(C)(1) that "[n]o person shall *bring or maintain* a tort action alleging an asbestos claim based upon lung cancer of an exposed person who is a smoker, in the absence of a prima-

facie showing" as specified by the statute. (Emphasis added.) The statute imposes a bar that expressly conditions the right to file and maintain lung-cancer-related asbestos claims on the plaintiff's either establishing that he or she is not a "smoker" or submitting the prima facie evidence required by R.C. 2307.92(C)(1) within 30 days after filing the complaint or other initial pleading.

{¶ 59} Moreover, the evidence needed to prove whether or not the plaintiff is required to make the prima facie showing is uniquely in the possession of the plaintiff. The plaintiff has access to his or her own medical records and smoking history, and the "competent medical authority" who must opine on whether or not the plaintiff is a "smoker" is "[t]he medical doctor [who] is actually treating or has treated the exposed person and has or had a doctor-patient relationship with the person," R.C. 2307.91(Z)(2). The legislature's public-policy preference to place the burden of proof on the plaintiff therefore appreciates the reality that he or she will already have or can readily obtain all the evidence necessary to provide a report of a competent medical authority that the plaintiff has not smoked at least "the equivalent of one-pack year" of tobacco over the prior 15 years. This explains why the General Assembly provided a strict time limit of 30 days after the filing of the complaint or other initial pleading to make this showing, ensuring that only those cases that are brought by nonsmokers or are supported by prima facie evidence can be maintained beyond the initial stages of litigation.

{¶ 60} The plaintiff's burden to prove that the prima-facie-case requirement of R.C. 2307.92(C)(1) does not apply is not a heavy one. If the defendant challenges the plaintiff's failure to submit prima facie evidence and if it is true that the plaintiff has not used smoking tobacco in the preceding 15 years, then his or her treating physician can submit the appropriate written report. If, however, as here, the plaintiff's medical records reveal use of smoking tobacco within the preceding 15 years, then only his or her treating physician can issue a written report opining whether or not that use rises to the threshold level of "one-pack year" pursuant to

the definition of "smoker" in R.C. 2307.91(DD). If the use of smoking tobacco falls below the "one-pack year" threshold, then the plaintiff is not required to submit prima facie evidence pursuant to R.C. 2307.92(C)(1). The burden to make a prima facie case becomes more onerous only when the medical records and smoking history indicate that the exposed person has, in fact, smoked at least "the equivalent of one-pack year" and therefore is a "smoker" and is required to submit the prima facie evidence. But that was the General Assembly's express intention, because it sought to give priority to asbestos claims related to lung cancer brought by nonsmokers and by smokers who can demonstrate early on in litigation that that asbestos exposure, not smoking, caused lung cancer.

{¶ 61} The lead opinion's reasoning fails to appreciate that the defendant will not be able to discover the plaintiff's smoking history and have a competent medical authority prepare a report opining that the plaintiff is a "smoker" within the strict time limits established by the statute. Further, when the defendant does not obtain evidence related to the plaintiff's use of smoking tobacco until the late stages of litigation, the legislative intent to prioritize claims of plaintiffs who can demonstrate actual injury caused by asbestos exposure and to conserve the resources of the courts and defendants has been defeated.

{¶ 62} Importantly, the failure of a "smoker" to submit prima facie evidence does not terminate the claim but only delays it. R.C. 2307.93(C) directs the trial court to administratively dismiss the complaint *without prejudice* when a "smoker" fails to make the required prima facie showing. R.C. 2307.93(C) also requires the court to retain jurisdiction over the case, providing that the plaintiff may move to reinstate it when he or she is able to make the prima facie showing. The statute does not eliminate any potentially meritorious claims of smokers but, rather, requires that the plaintiff make a sufficient showing that exposure to asbestos caused his or her lung cancer in order to maintain the action.

*Challenge to the Prima Facie Evidence*

**{¶ 63}** The lead opinion also misconstrues the plain language of R.C. 2307.93(B) when it concludes that *the defendant* is required to submit the report of a competent medical professional to prove that the plaintiff is a "smoker." R.C. 2307.93(A)(1) and (B) permit the defendant to challenge only the adequacy of the plaintiff's proffer of prima facie evidence of the exposed person's "physical impairment" within 120 days from the date of the proffer. "Physical impairment" is defined by R.C. 2307.91(V) to include "lung cancer of an exposed person who is a smoker that meets the minimum requirements specified in division (C) of section 2307.92 of the Revised Code." The defendant may challenge the plaintiff's prima facie evidence that the smoker's exposure to asbestos is a substantial contributing factor to his or her lung cancer, but challenging the sufficiency of the evidence of *impairment* is not the same thing as challenging the sufficiency of evidence that the exposed person is not a "*smoker*."

**{¶ 64}** This conclusion is consistent with the language of the statute, which states, "The defendant has one hundred twenty days from the date the specified type of prima-facie evidence *is proffered* to challenge the adequacy of that prima-facie evidence [emphasis added]," R.C. 2307.93(A)(1). The word "proffer" means "[t]o offer or tender (something, esp. evidence) for immediate acceptance." *Black's Law Dictionary* 1403 (10th Ed.2014). Because the General Assembly has used the present tense, it provided that a challenge to prima facie evidence would lie only *after* the plaintiff has actually submitted it to the court. But not only would the lead opinion require the defendant to challenge the plaintiff's *failure to proffer* prima facie evidence, it also would impose a strict time limit on when the defendant may make that challenge. Importantly, under the lead opinion's analysis, that time limit would likely expire before the defendant has had the opportunity to obtain full discovery of the medical records and other evidence necessary to determine whether the plaintiff has smoked at least "the equivalent of one-pack year" within

the preceding 15 years. When discovery calls into question the plaintiff's proffered opinion that he or she is not a "smoker," it is the plaintiff who should be required to show entitlement to maintain the action in the absence of a prima facie case.

{¶ 65} The lead opinion's reasoning not only runs counter to the plain language of the statute but also undermines the General Assembly's expressed intent to prioritize the claims of plaintiffs who can demonstrate *at the outset of the litigation* that exposure to asbestos caused injury and to "conserve the scarce resources of the defendants," 150 Ohio Laws, Part III, at 3991. Nothing in the language enacted by the General Assembly indicates that it intended to allow a "smoker" to avoid the carefully balanced procedural requirements for filing an asbestos claim simply by remaining silent.

{¶ 66} Accordingly, when the plaintiff alleges that exposure to asbestos caused lung cancer and when evidence reveals that the plaintiff has used smoking tobacco in the preceding 15 years, the plaintiff may maintain the claim without having timely submitted prima evidence only if the plaintiff submits a written report by a competent medical authority that that use is less than "the equivalent of one-pack year," R.C. 2307.91(DD). If the plaintiff fails to do so, the complaint must be administratively dismissed.

*The Definition of "Smoker"*

{¶ 67} The lead opinion's overreach is all the more glaring because we accepted a single question for review: when a plaintiff files a claim alleging that exposure to asbestos caused lung cancer without proffering the prima facie evidence required by R.C. 2307.92(C)(1) and when evidence is subsequently produced in discovery revealing that the plaintiff has a history of using smoking tobacco in the preceding 15-year period, is the written report of a competent medical authority the exclusive means of proving that the plaintiff is not a "smoker" as defined by R.C. 2307.91(DD)? The answer is "yes."

**{¶ 68}** Resolving this narrow question begins in a familiar place: statutory construction. Our duty in construing a statute is to determine and give effect to the intent of the General Assembly as expressed in the language it enacted. *Griffith v. Aultman Hosp.*, 146 Ohio St.3d 196, 2016-Ohio-1138, 54 N.E.3d 1196, ¶ 18; *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 20. R.C. 1.42 guides our analysis; that statute provides that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." And as we explained in *Symmes Twp. Bd. of Trustees v. Smyth*, "[w]hen the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). Rather, "[a]n unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.

**{¶ 69}** The statutory scheme establishes only one criterion for determining whether the exposed person is or is not a "smoker" for purposes of bringing or maintaining an action alleging that asbestos exposure caused lung cancer. A "smoker" is a person who has smoked at least "the equivalent of one-pack year" during the 15 years preceding commencement of the action *as specified in the written report of a competent medical authority*. R.C. 2307.91(DD). The statute is plain and unambiguous and represents a public-policy choice by the General Assembly that only medical evidence from the plaintiff's own treating physician can determine the exposed person's smoking status. Because the legislature has differentiated between using tobacco and being a "smoker," any form of evidence relating to the amount and duration of prior tobacco use other than the report of a competent medical authority is not sufficient to prove that the exposed person is or is not a "smoker."

**{¶ 70}** The jurists joining the lead opinion agree with this conclusion and reject Turner's argument "that whether and how much someone has smoked is a

factual question best left to a factfinder rather than a medical professional," because "[t]his is an argument for the legislature, not this court." Lead opinion at ¶ 20. Answering the only question of law presented by the parties should end the analysis.

{¶ 71} The legislature provided that in establishing whether the exposed person is or is not a "smoker," the report of a competent medical authority pursuant to R.C. 2307.91(DD) is determinative, and that report must be prepared by a medical doctor who "is actually treating or has treated the exposed person and has or had a doctor-patient relationship with the person," R.C. 2307.91(Z)(2). The testimony of the exposed person or his or her friends and relatives about the exposed person's use of smoking tobacco is not relevant on the question.

{¶ 72} Here, Turner sought to recover for lung cancer allegedly caused by asbestos exposure, and his complaint did not give any notice that he had used smoking tobacco in the preceding 15 years. In response to Union Carbide's motion to administratively dismiss his complaint for failing to submit prima facie evidence of his impairment, Turner submitted his own affidavit averring that he had not used tobacco products since 1956 and supported that assertion with a selection of his medical records reflecting a lack of use of tobacco in the social-history portion of the records. Based on that evidence, Union Carbide withdrew its motion while expressly reserving its right to renew it, and Turner did not object. Only after Union Carbide acquired Turner's medical records and deposed Turner's treating physician did Union Carbide come to realize that Turner's medical records and treating physician's deposition indicated use of smoking tobacco in the preceding 15 years. Union Carbide also obtained the expert opinion of a pulmonologist who reviewed Turner's medical records, symptoms, and history and averred that "[a]s a pulmonologist, [he] would consider Bobby Turner to be a smoker." It then renewed its motion to administratively dismiss the complaint on the basis that Turner had not made a prima facie case pursuant to R.C. 2307.92(C)(1).

{¶ 73} Because the 30-day period the General Assembly afforded for making a prima facie case had expired, the only way Turner could "maintain" his asbestos action was by proving that the prima-facie-case requirement of R.C. 2307.92(C)(1) did not apply to him, and he could prove that only through a written report of a competent medical authority indicating that his use of smoking tobacco was less than "the equivalent of one-pack year," R.C. 2307.91(DD). Because of the language of the relevant statutory provisions, Turner could not rest on any express or implied allegations of the complaint nor could he rely on any other evidence relating to past use of smoking tobacco to show that he was not required to submit prima facie evidence. Turner failed to submit the report of a competent medical authority opining that his use of smoking tobacco was less than "the equivalent of one-pack year" and that he was therefore not a "smoker," and his complaint should have been administratively dismissed without prejudice (allowing him to move to reinstate it if and when he can prove that he is not a "smoker").

{¶ 74} The negative consequences that would result from adopting the lead opinion's position cannot be overstated. Rather than interpreting and applying the plain language of the statutory scheme, the lead opinion would eviscerate it. According to the lead opinion, the plaintiff does not have the burden to prove that the prima-facie-case requirement does not apply to his or her case. In shifting the burden to the defendant, the lead opinion would give defendants only an illusory opportunity to prove that the plaintiff's use of smoking tobacco is at least "the equivalent of one-pack year," R.C. 2307.91(DD). Applying today's lead opinion would therefore cripple the legislature's effort to stem the "unending flood of asbestos cases" brought by plaintiffs who cannot prove that their exposure to asbestos actually caused their lung cancer, 150 Ohio Laws, Part III, at 3990. The General Assembly therefore must act swiftly to clarify its intent in enacting H.B. 292 or risk returning Ohio to the days of being "a haven for asbestos claims" that clog our courts, threaten our economy, adversely affect our communities, and

jeopardize the compensation of those actually injured by exposure to asbestos, *id.* at 3989-3991.

## Conclusion

{¶ 75} When discovery reveals evidence that the plaintiff used smoking tobacco in the 15 years preceding commencement of the action, the only means the plaintiff has of demonstrating that he or she was not required to make a prima facie case within 30 days after commencing the action is for the plaintiff to prove that his or her use of smoking tobacco is less than "the equivalent of one-pack year" through a written report of a competent medical authority, R.C. 2307.91(DD). Turner failed to meet that burden. Accordingly, I would reverse the judgment of the court of appeals and order that the complaint be administratively dismissed without prejudice.

O'DONNELL, J., concurs in the foregoing opinion.

_____

**DEWINE, J., concurring in judgment only.**

{¶ 76} The lead opinion answers a question not asked by either party and in answering the question, creates a new scheme not enacted by the legislature. Because I believe we should confine ourselves to the question posed by the parties and to the statutory scheme enacted by the legislature, I write separately.

{¶ 77} The question presented in this appeal is how to determine whether a plaintiff who alleges that he suffers from lung cancer as a result of asbestos exposure is a smoker or a nonsmoker. Bobby Turner maintains that the court of appeals correctly held that the determination is a question of fact. Union Carbide Corporation counters that Turner, who had a history of smoking, needs to prove by means of a written report from a competent medical authority that he is not a smoker as defined by statute, R.C. 2307.91(DD). I find the statutory definition of "smoker" dispositive and conclude that when in dispute, a person's smoking status must be determined based on the written report of a competent medical authority. I would

therefore reverse the court of appeals' judgment and remand the case to the trial court to determine whether Turner is a smoker according to the statute's definition.

### The Lead Opinion's Shaky Path to an Unasked Question

{¶ 78} The lead opinion starts in the right place. It notes that the case before us "presents the question of how to determine whether a plaintiff is a 'smoker.' " Lead opinion at ¶ 1. And it locates the answer to that question in the definition of "smoker" provided in R.C. 2307.91(DD). But then, it turns to a different question: whether Union Carbide met its burden to establish that Turner is a smoker, thus requiring Turner to make the prima facie showing required by R.C. 2307.92(C)(1). In doing so, the lead opinion invents a question never raised by the parties or the courts below.

{¶ 79} Until now, everyone had agreed that the burden is on the plaintiff to establish that he is not a smoker so that he need not make a prima facie showing. As the court of appeals put it in its opinion, "Union Carbide acknowledges, and we agree, that the trial court erroneously concluded that Union Carbide was required to prove Turner is a smoker. The law is clear that the plaintiff bears this burden." 2016-Ohio-7776, 66 N.E.3d 802, ¶ 8, fn. 2. Turner has not challenged this conclusion. Indeed, the dispute between the parties—the question that we agreed to answer—is how the plaintiff must meet his burden to prove that he is not a smoker.

{¶ 80} It has long been the policy of this court not to address issues not raised by the parties. *F. Ents., Inc. v. Kentucky Fried Chicken Corp.*, 47 Ohio St.2d 154, 163, 351 N.E.2d 121 (1976). We follow this rule not only out of respect for the adversarial process but also because it leads to better decision-making: "[J]ustice is far better served when it has the benefit of briefing, arguing, and lower court consideration before making a final determination." *Sizemore v. Smith*, 6 Ohio St.3d 330, 333, 453 N.E.2d 632 (1983), fn. 2.

{¶ 81} Nonetheless, the lead opinion pulls its new question out of thin air and then sets about answering it by creating a new four-step scheme only tenuously tethered to the statutes enacted by the legislature—a scheme that has not been suggested by either party or employed by any court.

**The Lead Opinion's Creation of a New Scheme to Answer the Unasked Question**

{¶ 82} The lead opinion advertises that its four-step approach "gives effect to the plain text of the relevant provisions of the statutory scheme." Lead opinion at ¶ 32. But that is not the case. In truth, the four-step approach is predicated upon ignoring large swaths of the statutory text and inserting requirements found nowhere in the statute.

*The lead opinion's four-step approach lacks statutory support*

{¶ 83} The statutory scheme, as written, sets forth prima facie requirements that must be met for certain categories of plaintiffs, including smokers. The natural reading of the statutory text requires determining first whether the plaintiff is a smoker and then, if so, whether the prima facie requirements have been met. The lead opinion, however, melds together the determination of smoking status and the establishment of the prima facie case. To understand the departures the lead opinion takes from the statutory language, it is helpful to go through its approach in some detail.

{¶ 84} *The lead opinion's step one*: The lead opinion begins by noting that a plaintiff who claims that his lung cancer was caused by asbestos exposure must file prima facie evidence of his physical impairment that comprises a written report and supporting results that meet the requirements of R.C. 2307.92(C)(1). It then says that a plaintiff who does not proffer prima facie evidence is implicitly asserting that he is not a smoker (and thus does not need to provide prima facie evidence).

{¶ 85} *The lead opinion's step two*: The lead opinion next turns to R.C. 2307.93(A)(1), which allows the defendant "to challenge the adequacy of the

proffered prima-facie evidence of the physical impairment." Relying upon R.C. 2307.93(A)(1), the opinion says, "If the defendant wishes to challenge the plaintiff's [implicit] assertion that [the plaintiff is not a smoker], the defendant must file a motion within the specified time frame and submit a written report from a physician that meets the requirements listed in R.C. 2307.91(Z)(1), (3) and (4)." Lead opinion at ¶ 29. The opinion further prescribes that the report specify that the plaintiff has smoked the equivalent of one pack year during the last 15 years.

{¶ 86} This is pulled from nowhere: by its plain terms, R.C. 2307.93(A)(1) simply does not provide for what the lead opinion says it does. The provision applies only to the defendant's challenge to the plaintiff's prima facie showing of physical impairment under R.C. 2307.92(C)(1):

> The plaintiff in any tort action who alleges an asbestos claim shall file, within thirty days after filing the complaint or other initial pleading, a written report and supporting test results constituting prima-facie evidence of the exposed person's physical impairment that meets the minimum requirements specified in division (B), (C), or (D) of section 2307.92 of the Revised Code, whichever is applicable. The defendant in the case shall be afforded a reasonable opportunity, upon the defendant's motion, *to challenge the adequacy of the proffered prima-facie evidence of the physical impairment for failure to comply with the minimum requirements specified in division (B), (C), or (D) of section 2307.92 of the Revised Code.* The defendant has one hundred twenty days from the date the specified type of prima-facie evidence is proffered to challenge the adequacy of that prima-facie evidence. If the defendant makes that challenge and uses a physician to do so, the

physician must meet the requirements specified in divisions (Z)(1), (3), and (4) of section 2307.91 of the Revised Code.

(Emphasis added.) R.C. 2307.93(A)(1). Thus, R.C. 2307.93(A)(1) provides for challenges only to the adequacy of "the proffered prima-facie evidence of the physical impairment." Plainly, the report on smoking status that the lead opinion would have the defendant submit at this stage is not a challenge to "the adequacy of the proffered prima-facie evidence of the physical impairment." In a case like this one, no prima facie evidence has been proffered by the plaintiff because the plaintiff claims that he is not a smoker. So the defendant is not challenging the "proffered prima-facie evidence." There is no evidence to consider the "adequacy of."

{¶ 87} Moreover, a defendant challenging a plaintiff's status as a nonsmoker is not challenging evidence "of the physical impairment." The statutory definition of "physical impairment" makes this crystal clear:

"Physical impairment" means a nonmalignant condition that meets the minimum requirements specified in division (B) of section 2307.92 of the Revised Code, lung cancer of an exposed person who is a smoker that meets the minimum requirements specified in division (C) of section 2307.92 of the Revised Code, or a condition of a deceased exposed person that meets the minimum requirements specified in division (D) of section 2307.92 of the Revised Code.

R.C. 2307.91(V). Recognizing the incongruence of its approach with the statutory language, the lead opinion notes that the definition of "physical impairment" refers to "an exposed person who is a smoker," R.C. 2307.91(V). From this, it surmises that "when the defendant challenges the adequacy of the plaintiff's prima facie

evidence of a physical impairment, whether the plaintiff is a 'smoker' will, in certain cases, be part of such a challenge." Lead opinion at ¶ 26. But by definition, "physical impairment" refers to the required prima facie showing set forth in R.C. 2307.92(C)(1), not to the threshold question whether a plaintiff is a smoker.

{¶ 88} In short, nothing in R.C. 2307.93(A)(1) allows for the challenge to the plaintiff's smoking status imagined by the lead opinion.

{¶ 89} *The lead opinion's step three*: In another departure from the language of the statute, the lead opinion says, "Pursuant to R.C. 2307.93(B), the trial court considers the evidence submitted by the parties to determine whether 'a competent medical authority' has specified that the plaintiff is a 'smoker' as defined in R.C. 2307.91(DD)," lead opinion at ¶ 30. But R.C. 2307.93(B) deals only with challenges to the plaintiff's prima facie evidence of physical impairment under R.C. 2307.92(C)(1):

> If the defendant in an action challenges *the adequacy of the prima-facie evidence of the exposed person's physical impairment* as provided in division (A)(1) of this section, the court shall determine from all of the evidence submitted whether the proffered prima-facie evidence meets the minimum requirements specified in division (B), (C), or (D) of section 2307.92 of the Revised Code. The court shall resolve the issue of whether the plaintiff has made *the prima-facie showing required by division (B), (C), or (D) of section 2307.92* of the Revised Code by applying the standard for resolving a motion for summary judgment.

(Emphasis added.)

{¶ 90} This provision is wholly inapplicable here: the issue that the lead opinion would resolve is not whether the plaintiff has made the prima facie showing

required by R.C. 2307.92(C)(1) but, rather, whether the plaintiff is a smoker as defined by R.C. 2307.91(DD).

**{¶ 91}** *The lead opinion's step four*: The lead opinion says that if a smoker fails to meet the prima facie requirements, the court shall administratively dismiss the case. Of course, this is correct—it is what the statute says. The problem is the extra-statutory route that the lead opinion takes to determine whether a plaintiff is a smoker. By their plain terms, the statutory provisions cited in the lead opinion's steps two and three apply only to challenges to a plaintiff's prima facie evidence of impairment. And for lung-cancer plaintiffs, this prima facie evidence is proffered only *after* the plaintiff is determined to be a smoker.

**{¶ 92}** Only after unveiling its new regime does the lead opinion get around to the question we agreed to answer. It concludes that a plaintiff is not required "to prove, through a 'written report of a competent medical authority,' that he or she is not a 'smoker' as defined in R.C. 2307.91(DD)." Lead opinion at ¶ 33. The opinion goes on to explain that "[t]he plaintiff must satisfy the requirements set forth in R.C. 2307.92(C)(1) only when the plaintiff has been designated a 'smoker' in a written report of a competent medical authority pursuant to R.C. 2307.91(DD)." Lead opinion at ¶ 33. And under the scheme that the lead opinion would create, the burden to "designate" the plaintiff a smoker would fall on the defendant.

**{¶ 93}** Under the lead opinion's freshly contrived approach, only the defendant would be permitted to submit evidence as to the plaintiff's smoking status. It admits that under its construction, there is "no mechanism by which the plaintiff may challenge a written report submitted by the defendant's physician specifying that the plaintiff is a 'smoker.' " *Id.* at ¶ 34. So a plaintiff proffers no evidence as to smoking status, the defendant responds to nonproffered evidence, and the plaintiff has no opportunity to respond once something tangible is actually filed? There is no statutory support for such a regime, and contrary to the lead opinion's assurances, it is neither fair nor workable.

***The lead opinion would shift the burden and offers a novel interpretation of "competent medical authority"***

{¶ 94} Perhaps the most novel part of the lead opinion's contrivance is its determination that it is the defendant's burden to demonstrate that the plaintiff is a smoker. It reaches this result by making two major revisions to the statutory text. First, as explained above, it conflates the plaintiff's establishment of his nonsmoking status with the showing that a defendant must make to challenge the plaintiff's prima facie evidence of physical impairment. Second, as explained below, it rewrites the definition of "competent medical authority."

{¶ 95} Recall the definition of "smoker": "a person who has smoked the equivalent of one-pack year, *as specified in the written report of a competent medical authority* pursuant to sections 2307.92 and 2307.93 of the Revised Code, during the last fifteen years." (Emphasis added.) R.C. 2307.91(DD). By definition, a "competent medical authority" is required to be a "medical doctor [who] is actually treating or has treated the exposed person and has or had a doctor-patient relationship with the person." R.C. 2307.91(Z)(2); *see also Renfrow v. Norfolk S. Ry. Co.*, 140 Ohio St.3d 371, 2014-Ohio-3666, 18 N.E.3d 1173, paragraph two of the syllabus ("Competent medical authority, as defined in R.C. 2307.91(Z), requires that a medical doctor must * * * actually be treating or have treated and have or had a doctor-patient relationship with the exposed person").

{¶ 96} The statutory requirement that the report used to determine the plaintiff's smoking status come from the plaintiff's own doctor makes sense: the plaintiff's treating physician is clearly in a better position than a nontreating defense expert to attest to the plaintiff's smoking history. And the requirement comports with placing the burden to establish nonsmoking status on the plaintiff, who will be in the best position to obtain a report from his treating physician.

{¶ 97} But under the lead opinion's four-step approach, it is the defendant who must submit the report from the "competent medical authority." To achieve

36

this result, the lead opinion needs to get around the statutory requirement that the "competent medical authority" be someone who is or has been in a doctor-patient relationship with the plaintiff. It does this by simply deleting the doctor-patient requirement from the definition. The lead opinion states, "[P]ursuant to R.C. 2307.93(A)(1), * * * when the defendant presents a written report for the purpose of challenging the sufficiency of the plaintiff's prima facie evidence, the physician who prepared that report will be considered a 'competent medical authority' if that physician meets only the requirements of R.C. 2307.91(Z)(1), (3), and (4)." Lead opinion at ¶ 25. The problem is that R.C. 2307.93(A)(1) says no such thing. R.C. 2307.93(A)(1) does allow a defendant to use a doctor who is not a treating physician (and thus not a competent medical authority) to challenge "the plaintiff's prima facie evidence." But nothing in R.C. 2307.93(A)(1) makes such a doctor a "competent medical authority."

**{¶ 98}** In short, the result envisioned by the lead opinion rests upon yet another statutory revision. The lead opinion's approach rewrites the definition of "competent medical authority," excising from the statute the requirement of a doctor-patient relationship. Further, it would overrule our holding in *Renfrow*, without even acknowledging that it's doing so.

**{¶ 99}** No question, the scheme that the legislature drafted is complicated. The lead opinion apparently is convinced that by tweaking and revising the statutory language it can work an improvement—one that lends itself to a simple four-step approach. But our role is to apply the law as it exists to cases that have been presented to us. It is not to draft new statutory provisions, nor is it to answer questions that have not been presented through the adversarial process. The lead opinion's legislative craftsmanship would foist an entirely new regime on litigants and trial courts without the checks on improvident decision-making that our adversarial system ordinarily provides through layers of appellate review and briefing. And it would take the court well outside its adjudicative role, ignoring the

scheme that the legislature has drafted and trampling upon the legislative process that created it.

**The Statutory Definition Disposes of the Question We Agreed to Review**

{¶ 100} When we confine ourselves to the question asked by the parties—that is, how is a plaintiff's smoking status to be proved—we return to the point where the lead opinion started its analysis: R.C. 2307.91(DD)'s definition of "smoker."

{¶ 101} Union Carbide maintains that under a straightforward reading of the statute, Turner needed to establish that he is not a smoker as defined in R.C. 2307.91(DD) by means of a written report from a competent medical authority.

{¶ 102} Turner counters that despite the statute's reference to a written report from a competent medical authority, he need not provide such a report to prove that he is not a smoker. In his view (and the view of the court of appeals), first, one is determined to be smoker and then, a competent medical authority prepares a report.

{¶ 103} The problem with Turner's reading is that it would make the entire definition of "smoker" unnecessary. If the definition applied only when a prima facie showing is required, there would be no need to resort to the definition: a person's status as a smoker would already have been determined. A more reasonable reading of the statute is that the starting point must be determining a person's smoking status. Only after it is established whether a person is a smoker—that is, whether he smoked the equivalent of one pack year in the past 15 years, based on the report of a competent medical authority—can the need for a prima facie showing be determined.

**Conclusion**

{¶ 104} Unlike the lead opinion, I would stick to the statutory scheme that the legislature gave us. I would reverse the judgment of the court of appeals and

remand the case to the trial court to determine whether Turner is a smoker under R.C. 2307.91(DD).

_____

Vorys, Sater, Seymour & Pease, L.L.P., Richard D. Schuster, Perry W. Doran II, Daniel E. Shuey, and Damien C. Kitte, for appellant.

McDermott & Hickey, L.L.C., Kevin E. McDermott, and Christopher J. Hickey; and Levy Konigsberg, L.L.P., and Donald P. Blydenburgh, for appellee.

Bricker & Eckler, L.L.P., Anne Marie Sferra, and Kara Herrnstein, urging reversal for amici curiae, Ohio Manufacturers' Association, Ohio Alliance for Civil Justice, and Ohio Council of Retail Merchants.

_____