[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bituminous Concrete Corp. v. Harrison Twp. Bd. of Zoning Appeals*, Slip Opinion No. 2020-Ohio-845.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-845

COLUMBUS BITUMINOUS CONCRETE CORPORATION ET AL., APPELLANTS, *v.*

HARRISON TOWNSHIP BOARD OF ZONING APPEALS ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bituminous Concrete Corp. v. Harrison Twp. Bd. of Zoning Appeals*, Slip Opinion No. 2020-Ohio-845.]**

*Zoning—Townships—Township trustees may regulate mining under R.C. 519.02(A) only in the interest of public health and safety—R.C. 519.141(A) does not provide board of zoning appeals with basis for denying an application to engage in mining when an application fails to meet a township's general conditions—Court of appeals' judgment reversed and cause remanded to the board of zoning appeals.*

(No. 2018-1008—Submitted July 9, 2019—Decided March 11, 2020.)

APPEAL from the Court of Appeals for Pickaway County,

No. 17CA15, 2018-Ohio-2706.

_____

**O'CONNOR, C.J.**

**{¶ 1}** In this appeal, we consider whether appellee Harrison Township Board of Zoning Appeals ("BZA") lawfully denied an application for a conditional-use permit to conduct sand-and-gravel mining based on general conditions applicable to all conditional uses set out in a Harrison Township zoning resolution. We conclude that it did not. We therefore reverse the judgment of the Fourth District Court of Appeals, vacate the orders issued by the BZA and the court of common pleas, and remand the cause to the BZA.

## I. BACKGROUND

**{¶ 2}** Appellant Columbus Bituminous Concrete Corporation owns 178.9 acres of land in Harrison Township, on which it seeks to have appellant Shelly Materials, Inc., conduct quarrying and mining of sand and gravel. (We refer to appellants, Columbus Bituminous Concrete Corp. and Shelly Materials, Inc., collectively as "CBCC.") CBCC sought approval from the BZA to engage in sand-and-gravel mining, but the BZA denied its request, and the court of common pleas and the Fourth District affirmed on appeal.

### A. Relevant Laws

**{¶ 3}** Ohio townships have " 'no inherent or constitutionally granted police power, the power upon which zoning legislation is based. Whatever police or zoning power townships of Ohio have is that delegated by the General Assembly, and it follows that such power is limited to that which is expressly delegated to them by statute.' " *Bainbridge Twp. Bd. of Trustees v. Funtime, Inc.*, 55 Ohio St.3d 106, 108, 563 N.E.2d 717 (1990), quoting *Yorkavitz v. Columbia Twp. Bd. of Trustees*, 166 Ohio St. 349, 351, 142 N.E.2d 655 (1957). *See also Apple Group, Ltd. v. Granger Twp. Bd. of Zoning Appeals*, 144 Ohio St.3d 188, 2015-Ohio-2343, 41 N.E.3d 1185, ¶ 6 ("In Ohio, the authority of a township to enact zoning ordinances derives not from the township's inherent authority or the Ohio Constitution, but from the General Assembly").

2

*1. Revised Code Provisions on Township Trustees' Power to Adopt Regulations*

{¶ 4} R.C. 519.02 grants township trustees the power to adopt certain building and land-use regulations. These regulations pertain to matters such as "the location, height, bulk, number of stories, and size of buildings and other structures, * * * and the uses of land for trade, industry, residence, recreation, or other purposes." R.C. 519.02(A). But the statute places certain restrictions on township trustees' power to adopt these regulations. Namely, the regulations are permitted to further only specified interests, including "public health and safety" and "public convenience, comfort, prosperity, or general welfare." *Id.* The statute also provides that certain types of regulations may apply only to nonresidential properties. *Id.*

{¶ 5} After setting out these grants of power, R.C. 519.02(A) contains a provision applying only to mining activities regulated under R.C. Chapters 1513 and 1514, which concern coal and other surface mining, respectively. The sand-and-gravel mining sought to be engaged in by CBCC is regulated under R.C. Chapter 1514. R.C. 519.02(A) states:

> For any activities permitted and regulated under Chapter 1513. or 1514. of the Revised Code and any related processing activities, the board of township trustees may regulate under the authority conferred by this section *only in the interest of public health or safety*.

(Emphasis added.) *Id.*

*2. Revised Code Provisions on the Board of Zoning Appeals' Power to Grant Conditional Zoning Certificates*

{¶ 6} The Revised Code also empowers a township board of zoning appeals to "[g]rant conditional zoning certificates for the use of land, buildings, or other structures if such certificates for specific uses are provided for in the zoning

resolution." R.C. 519.14(C). But for mining activities "permitted and regulated under Chapter 1514. of the Revised Code * * *, the board shall proceed in accordance with section 519.141 of the Revised Code." *Id.*

{¶ 7} R.C. 519.141(A) provides that the BZA "shall not consider or base its determination on matters that are regulated by any federal, state, or local agency." But it "may require as a condition of the approval of a conditional zoning certificate * * * compliance with any general standards contained in the zoning resolution that apply to all conditional uses that are provided for in the zoning resolution * * *." *Id.* With certain exceptions not relevant here, the BZA also may

require any specified measure, including, but not limited to, one or more of the following:

(1) Inspections of nearby structures and water wells to determine structural integrity and water levels;

(2) Compliance with applicable federal, state, and local laws and regulations;

(3) Identification of specific roads in accordance with division (B) of section 303.141 of the Revised Code to be used as the primary means of ingress to and egress from the proposed activity;

(4) Compliance with reasonable noise abatement measures;

(5) Compliance with reasonable dust abatement measures;

(6) Establishment of setbacks, berms, and buffers for the proposed activity;

(7) Establishment of a complaint procedure;

(8) Any other measure reasonably related to public health and safety.

R.C. 519.141(A).

{¶ 8} Finally, the board of zoning appeals may "[r]evoke [a] * * * conditional zoning certificate granted for the extraction of minerals, if any condition of the * * * certificate is violated." R.C. 519.14(D).

*3. Regulation of Conditional Uses in Harrison Township*

{¶ 9} Pursuant to R.C. Chapter 519, the Harrison Township Board of Trustees has adopted a zoning resolution regulating land use in the township. *See Harrison Township, Pickaway County, Ohio Zoning Resolution* (March 2008), available at https://www.harrisonpickaway.com/pdf/zoningresolution.pdf (accessed February 14, 2020) [https://perma.cc/ZEX9-7NNE] ("Zoning Resolution").

{¶ 10} Article XVII of the Zoning Resolution identifies uses that are specifically permitted on property zoned as a "general business district," as CBCC's property is, as well as several "Conditional Uses." A "Conditional Use" is "an uncommon or infrequent use which may be permitted in specific zoning districts subject to compliance with certain standards, explicit conditions, and the granting of a conditional use permit as specified in Article IX of this Resolution." *Id.* at Article 2, Section 2.02. "Quarrying or mining operations" are among the conditional uses permitted in a general business district, "provided that all County, State and federal regulations are met and licenses are obtained." *Id.* at Article XVII, Section 17.03(J).

{¶ 11} A property owner seeking permission to engage in a conditional use must file an application for review by the BZA. *See id.* at Article IX, Section 9.02. The application must contain specific information on the proposed conditional use and its impact on the surrounding area, *id.*, and for applications to engage in mining in particular, a development plan is required, *id.* at Article XVII, Section 17.03(J).

{¶ 12} In addition to these provisions, the township trustees have enacted General Standards for Conditional Uses, which the BZA is also required to

consider. *Id.* at Article IX, Section 9.03 ("General Standards"). The General Standards require the BZA to "review the particular facts and circumstances of each proposed use in terms of [six specified standards] and * * * find adequate evidence that such use at the proposed location meets all of [those] requirements." *Id.* Three of those six requirements are relevant to this case—subsections (B), (E), and (F). They require the BZA to find the following:

> (B) The use will be designed, constructed, operated and maintained so as to be harmonious and appropriate with the existing or intended character of the general vicinity and that such use will not change the essential character of the same area.
>
> * * *
>
> (E) The use will not involve uses, activities, processes, materials, equipment and conditions of operation that will be detrimental to any persons, property, or the general welfare by reason of excessive production of traffic, noise, smoke, fumes, glare or odors.
>
> (F) The use will be consistent with the objectives of this Zoning Resolution and any adopted comprehensive plan for the area.

*Id.* at Section 9.03.

{¶ 13} According to Article XI of the Zoning Resolution, "a conditional use shall be allowed [by the BZA] * * * when such use, its location, extent and method of development will not substantially alter the character of the vicinity, or unduly interfere with or adversely impact the use of adjacent lots." *Id.* at Article XI, Section 11.02.04.

{¶ 14} In the course of considering the application, the BZA may hold a hearing. *Id.* at Section 9.05. In the end, the BZA "shall either approve, approve with supplementary conditions * * *, or disapprove the application as presented." *Id.* at Section 9.06; Section 9.04 ("In granting any conditional use, the Board may prescribe appropriate conditions and safeguards in conformance with this Resolution"). Once an application is approved, the BZA may revoke the conditional-use certificate "upon written evidence by any resident or official of the Township of violation of the Zoning Resolution and/or written terms and conditions upon which approval was based." *Id.* at Section 9.07.

### B. The decisions in this case

{¶ 15} CBCC submitted an application for conditional use to the BZA, seeking approval to engage in quarrying and mining sand and gravel. The BZA held three hearings on the application, at which it received testimony from numerous witnesses. At the conclusion of the third hearing, the BZA denied the application. In doing so, however, it made no findings of fact and engaged in no discussion of the relevant law. It subsequently issued a written decision in which it stated only that CBCC "was unable to affirmatively prove all the requirements of [the General Standards contained in] the Harrison Township Zoning Resolution." It provided no explanation of what facts supported that conclusion.

{¶ 16} CBCC appealed the BZA's decision to the Pickaway County Court of Common Pleas. The trial court held that the BZA appropriately required CBCC to show compliance with the General Standards contained in the Zoning Resolution. It also held that the BZA did not err when it found that CBCC had provided insufficient evidence of its proposal's compliance with the General Standards, pointing to the three General Standards noted above. *See id.* at Section 9.03(B), (E), (F). Unlike the BZA, however, the trial court identified evidence it believed supported the conclusion that CBCC had failed to meet these

General Standards.[1] The trial court therefore affirmed the BZA's denial of CBCC's application for a conditional-use permit.

{¶ 17} CBCC then appealed to the Fourth District Court of Appeals, which affirmed. The appellate court rejected CBCC's argument that the trial court inappropriately considered the Zoning Resolution's General Standards for Conditional Uses; it did so because R.C. 519.141(A) expressly permits the BZA to "require as a condition of the approval of a conditional zoning certificate * * * compliance with any general standards contained in the zoning resolution that apply to all conditional uses," R.C. 519.141(A). *See* 2018-Ohio-2706 at ¶ 27, 33. The appellate court also found sufficient evidence to support the conclusion that CBCC failed to meet the General Standards contained in Article IX, Sections 9.03(B), (E), and (F) of the Zoning Resolution.

{¶ 18} CBCC then sought review by this court, and we granted jurisdiction over the following proposition of law:

A township's jurisdiction to regulate surface mining activities permitted and regulated under Chapter 1513. or 1514. through zoning is strictly limited to matters of public health or safety, whether mining is a permitted use or conditional use under the township zoning resolution. R.C. 519.02. A township may not regulate mining in the interest of general welfare, directly or indirectly through the creation of general zoning criteria that appl[y] to all permitted or conditionally permitted uses in the township, including mining. R.C. 519.02, 519.14, and 519.141.

---

1. Among other things, the trial court pointed to a substantial increase in traffic in the area, noting that up to 180 truck trips per day were expected, along with the lack of any sound, sight, and safety barriers planned for the south side of CBCC's property, insufficient dust-abatement measures, and that the development plan for the area envisioned mining only on the west side of S.R. 23, while other uses were envisioned for the east side, the location of CBCC's property.

*See* 2018-Ohio-4092, 153 Ohio St.3d 1494, 108 N.E.3d 1103.

## II. ANALYSIS

{¶ 19} We review questions of statutory interpretation de novo. *Turner v. CertainTeed Corp.*, 155 Ohio St.3d 149, 2018-Ohio-3869, 119 N.E.3d 1260, ¶ 11.

{¶ 20} The dispute in this case focuses on two of the statutes discussed above. R.C. 519.02(A) prohibits a township from regulating mining activities for any reason other than "the interest of public health or safety," while R.C. 519.141(A) permits the BZA to "require * * * compliance with any general standards contained in the zoning resolution that apply to all conditional uses." We must determine whether a general standard that does not relate to public health or safety may be applied to deny an application to conduct mining as a conditional use.

{¶ 21} CBCC argues that a general standard that does not relate to public health or safety cannot be applied to deny a conditional-use application to engage in mining activities and that the Fourth District erred by holding to the contrary. CBCC asserts that because R.C. 519.02(A) expressly limits township trustees' power to regulate mining to matters in the interest of public health and safety, no zoning regulation concerning interests unrelated to public health and safety, such as general welfare, can provide a basis for denying a mining application.

{¶ 22} Appellees Harrison Township, the BZA, and the township zoning inspector respond by asserting that R.C. 519.141(A) reflects a grant of power to the township trustees that is not eclipsed by R.C. 519.02. They argue that by expressly permitting the BZA to "require * * * compliance with any general standards contained in the zoning resolution that apply to all conditional uses," R.C. 519.141(A), the statute permits the trustees to adopt general standards in the interest of general welfare that are applicable to conditional-use applications to engage in mining.

**{¶ 23}** Appellee Berger Health System additionally argues that the General Assembly easily could have included an exception or limiting language making clear that R.C. 519.141(A) permitted the application of general standards to mining applications only insofar as they are in the interest of public health and safety but that it did not do so. Instead, Berger argues, R.C. 519.141(A) permits the application of "any" general standards.

**{¶ 24}** We agree with CBCC.

**{¶ 25}** Because a township's authority to adopt zoning regulations " 'is limited to that which is expressly delegated * * * by statute,' " *Bainbridge Twp. Bd. of Trustees*, 55 Ohio St.3d at 108, 563 N.E.2d 717, quoting *Yorkavitz*, 166 Ohio St. at 351, 142 N.E.2d 655, our analysis of whether the General Standards may be applied to deny CBCC's application must begin by recognizing the limited scope of the powers granted to the trustees by the General Assembly. R.C. 519.02(A) is clear that township trustees may adopt resolutions pertaining to mining activities regulated under R.C. Chapters 1513 and 1514 "under the authority conferred by this section *only in the interest of public health and safety*." (Emphasis added.) Any exercise of the township trustees' regulatory powers under R.C. 519.02 must be consistent with this limitation.

**{¶ 26}** R.C. 519.141(A) does not expand or limit township trustees' regulatory power. It first prohibits a board of zoning appeals from considering "matters that are regulated by any federal, state, or local agency." The language to which appellees point is then stated as an exception to this rule: "*However*, the board may require as a condition of the approval of a conditional zoning certificate for [an R.C. Chapter 1514 mining] activity compliance with any general standards contained in the zoning resolution that apply to all conditional uses."[2] (Emphasis

---

2. As noted above, R.C. 519.141(A) also permits the board to impose "any specified measure," including eight listed measures, the last of which is "[a]ny other measure reasonably related to public health and safety."

added.)  Any general standards with which the board may require compliance under R.C. 519.141(A) must be adopted pursuant to powers granted to township trustees elsewhere in the Revised Code.

{¶ 27} Furthermore, R.C. 519.141(A) does not provide a board of zoning appeals with a basis for *denying* an application to engage in mining when the application fails to meet a township's general conditions.  R.C. 519.141(A) simply provides that the board may not consider "matters that are regulated by any federal, state, or local agency," but it may require compliance with general standards "as a condition of the approval."[3]

{¶ 28} This analysis leads to two conclusions relevant to the outcome of the present appeal.  First, because township trustees may regulate mining under R.C. 519.02(A) only in the interest of public health and safety, when the BZA considers an application to engage in mining activities, it may require compliance with the General Standards only insofar as doing so is in the interest of public health and safety.[4]  Second, even when compliance with the General Standards is in the interest of public health and safety, the BZA may require compliance with those standards only as conditions of the approval of an application.  The BZA may not deny an application to engage in mining when it finds the applicant has not established compliance with those standards.

---

3. We reject Berger Health System's argument that CBCC's application was properly denied because R.C. 519.141(A), as the later-enacted statute, governs over R.C. 519.02(A) and permits the denial of CBCC's application.  Because the two statutes address different subjects—one addresses trustees' regulatory powers while the other addresses the board of zoning appeals' mining-application review process—there is no need to consider whether one governs over the other.

4. This principle applies equally to other resolutions adopted by the Harrison Township Board of Trustees pursuant to R.C. 519.02(A).  Resolutions based on other interests, such as general welfare, cannot be applied to activities regulated under R.C. Chapters 1513 and 1514.  Furthermore, provisions potentially based on multiple interests, at least one of which is public health or safety, may be applied to such activities only to the extent doing so is in the interest of public health and safety.

**{¶ 29}** We therefore hold that the Fourth District erred by holding that compliance with the General Standards is required irrespective of whether such compliance is in the interest of public health and safety and by holding that the absence of such compliance provides a basis for denying CBCC's application.

### III. CONCLUSION

**{¶ 30}** We reverse the decision of the Fourth District and remand the case to the BZA. On remand, the BZA shall consider CBCC's conditional-use application based on the evidence in the record, the provisions of the Revised Code, and the terms of the township Zoning Resolution. Consistent with this opinion, it must ensure that resolutions adopted pursuant to the powers granted in R.C. 519.02(A), including the General Standards, are applied to CBCC's application only to the extent doing so is in the interest of public health and safety. Furthermore, if, upon applying General Standards in the interest of public health and safety to CBCC's application, the BZA finds that public-health-and-safety concerns are raised, it may address those concerns only through conditions on an approved application.

Judgment reversed
and cause remanded.

KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Kegler, Brown, Hill & Ritter, Co., L.P.A., and Catherine A. Cunningham; and Paul D. Rice, for appellants.

Judy C. Wolford, Pickaway County Prosecuting Attorney, and Jayme Hartley Fountain, Assistant Prosecuting Attorney, for appellees Harrison Township Board of Zoning Appeals, Harrison Township Zoning Inspector Dale Hoover, and Harrison Township.

Bricker & Eckler, L.L.P., Anne Marie Sferra, and Jennifer A. Flint, for appellee Berger Health System.

Eastman & Smith, Ltd., Brian P. Barger, and Barry W. Fissel, urging reversal for amici curiae Ohio Aggregates and Industrial Minerals Association, Flexible Pavements of Ohio, Ohio Ready Mixed Concrete Association, and Ohio Contractors Association.

David P. Fornshell, Warren County Prosecuting Attorney, and Kathryn M. Horvath and Adam M. Nice, Assistant Prosecuting Attorneys, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association

Carlile, Patchen & Murphy, L.L.P., Carl A. Aveni, and Shaun P. Lyons, urging affirmance for amici curiae Pickaway County Board of Commissioners, village of Ashville, and village of South Bloomfield.

Brosius, Johnson & Griggs, L.L.C., Peter N. Griggs, Emily L. Butler, and Jennifer L. Huber, urging affirmance for amici curiae Ohio Township Association and County Commissioners Association of Ohio.

_____